## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DR. RICHARD E. FISCHBEIN, MD, )
individually and as the )
representatives of a class of )
similarly-situated persons, )
          )
           Plaintiff, )   Case No.
          )
       v. )   CLASS ACTION
          )
THE OLSON RESEARCH GROUP, )
INC. and John Does 1-12, )
          )
          Defendants. )

## CLASS ACTION COMPLAINT

Plaintiff, Dr. Richard E. Fischbein, MD ("Plaintiff"), brings this action on behalf of himself and all other persons similarly situated and, except for those allegations pertaining to Plaintiff or his attorneys, which are based upon personal knowledge, allege the following upon information and belief against defendants, The Olson Research Group, Inc. ("Olson") and John Does 1-12:

## PRELIMINARY STATEMENT

1.     Defendants have sent advertisements by facsimile in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, and the regulations the Federal Communications Commission ("FCC")

has prescribed thereunder, 47 C.F.R. § 64.1200 (collectively, the "TCPA").

2.     Defendants sent Plaintiff at least one advertisement by facsimile and in violation of the TCPA. <u>Exhibit A</u>. Plaintiff did not expressly consent to receive any advertisement from Defendants by fax. Moreover, Plaintiff does not have an established business relationship with Defendants.

3.     Plaintiff brings this action against Defendants on behalf of a class of all persons and entities that Defendants sent one or more telephone facsimile messages ("faxes") about Defendants' marketing focus group program, seeking statutory damages for each violation of the TCPA, trebling of the statutory damages if the Court determines Defendants' violations were knowing or willful, injunctive relief, compensation and attorney fees (under the conversion count), and all other relief the Court deems appropriate under the circumstances.

4.     Defendants' unsolicited faxes damaged Plaintiff and the other class members. Unsolicited faxes tie up the telephone lines, prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the

recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message. The recipient of a "junk" fax loses the use of its fax machine while receiving an unsolicited fax transmission, and many lose their paper and ink toner in printing the fax. Such an unsolicited fax interrupts the recipient's privacy. A junk fax wastes the recipient's valuable time that would have been spent on something else.

5.     Defendants' fax advertises a marketing focus group program, a commercially available service. Exhibit A.

6.     Other information on Defendants' fax (Exhibit A) is mere pretext or subterfuge for evading the TCPA.

7.     Defendant Olson is a for-profit business.

8.     Defendant Olson's clients are companies in the healthcare industry, consulting firms, and other marketing research organization. Exhibit B ("Who are your clients?").

9.     Defendant Olson's Privacy Policy tells prospective survey participants, "The invaluable information and opinions you provide through market research surveys helps companies develop new

products and services, and modify existing ones to better suit your needs." Exhibit C ("Privacy Policy").

10.    Defendant Olson pays health professionals to participate in "surveys" and then packages the collected market research and other information for Defendants' clients.

## PARTIES, JURISDICTION, AND VENUE

11.    Plaintiff, Dr. Richard E. Fischbein, is a Pennsylvania resident and a physician specializing in psychiatry in a practice located in Kingston, Pennsylvania.

12.    On information and belief, Olson is a Pennsylvania corporation with its principal place of business in Yardley, PA.

13.    John Doe Defendants 1-12 are persons yet unknown to Plaintiff that actively participated in the transmission of fax advertisements to the class, or benefitted from those transmissions. When Plaintiff discovers their identities, he will seek leave to amend this complaint to add allegations regarding such person's activities and liabilities in this action.

14.    The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

15.   Personal jurisdiction exists over Defendant Olson in Pennsylvania because Defendant is a Pennsylvania corporation, has transacted business within the State, and has committed tortious acts within the State.

16.   Venue is proper in the Eastern District of Pennsylvania because Defendant Olson is located within this District, committed statutory torts within this District, and a significant portion of the events took place here.

## FACTS

17.   Defendants sent advertisements by facsimile to Plaintiff and a class of similarly-situated persons. Whether Defendants did so directly or with the assistance of a third party (yet unknown to Plaintiffs), Defendants are directly liable for violating the TCPA.

18.   Plaintiff has received at least one of Defendants' advertisements by facsimile. A true and correct copy of the fax Plaintiff received on May 17, 2017 is attached as Exhibit A.

19.   Exhibit A is a one-page document Defendants sent by fax advertising $150 compensation to "participate in a 45 minute marketing research study. The fax also advertises the commercial availability of

Defendants' paid marketing survey program, through which Defendants plan to gather valuable market research and other information or opinions from health professionals for Defendants' clients.

20.    <u>Exhibit A</u> includes the following instructions:

1.    Go to: www.olsononlinesystems.com
2.    Enter the following in the Study # box provided: z1361
3.    Enter the following password: jpatsy

21.    If one goes to the hyperlink on Defendants' fax as instructed—https://www.olsononlinesystems.com—one sees the following "Welcome to Olson Online" page:

> *The Olson Research Group, Inc. is a full-service marketing research firm, specializing in healthcare, consumer and agricultural research. We offer all phases of qualitative and quantitative research solutions.*
>
> ***If you are responding to a current online study, please type the study number below and click Submit:***

<u>Exhibit D</u>.

22.    Once a fax recipient enters the study number, hyperlinks on the Welcome page for the Olson "Terms & Conditions" and "Privacy Policy" direct users to these web pages:

http://www.olsononlinesystems.com/confirmit/terms.png.

http://www.olsononlinesystems.com/privacy.php (<u>Exhibit C</u>).

6

23.    The Frequently Asked Questions section of Defendants' website—found at http://www.olsonresearchgroup.com/contact/— informs as follows:

Frequently Asked Questions

How large is your panel of healthcare providers?

Olson Research Group does not offer a static panel of respondents but instead harnesses a proprietary database that contains ~2.4 million unique healthcare provider records, including 960,000 actively practicing physicians with associated NPI, and ~60,000 nurses and other para-professionals. The foundation of our database, which serves as the backbone for sourcing records as well as ensures the accuracy and validity, is Olson's exclusive partnership with a healthcare database consortium that assists us in cross-checking contact information (i.e. name, phone/email, specialty) with industry sources, and also appends details such as NPI numbers and other relevant targeting information. Data is imported and updated on a weekly basis. In conjunction with this relationship, Olson has specialty validation procedures in place for checking the accuracy of respondents during the lifecycle of every project using a multi-step process to ensure we are providing our clients with strategically profiled respondents for highly efficient fielding.

Exhibit E.

Who are your clients?

Olson is proud to have achieved one of the highest client retention rates in the industry over the past 20+ years. Our clients come from all dimensions of the healthcare spectrum, from end-user manufacturers, to consulting

7

firms and other marketing research organizations. We approach each project with a flexible and personalized approach to getting the right respondents and providing the insights they need to make fast decisions on their strategic goals. We are very proud that our reputation in the healthcare marketing research industry is such that we are considered the "go-to" firm when others are unable to satisfy a project's requirements.

Exhibit B.

24.    Exhibit A does not include a complaint mandatory opt-out notice required by 47 C.F.R. § 64.1200 (a) (4).

25.    Plaintiff did not expressly invite or give permission to anyone to send Exhibit A or any other advertisement from Defendants to Plaintiff's fax machine.

26.    On information and belief, Defendants sent advertisements by facsimile to Plaintiff and more than 39 other persons in violation of the TCPA.

27.    Plaintiff and the other class members owe no obligation to protect their fax machines from Defendants. Their fax machines are ready to send and receive their urgent communications, or private communications about patients' medical needs, not to receive Defendants' unlawful advertisements.

## CLASS ACTION ALLEGATIONS

28.    Plaintiff brings this action as a class action on behalf of himself and all others similarly situated as members of a class, initially defined as follows:

> Each person sent one or more telephone facsimile messages after December 13, 2013 from "Olson Research Group" inviting them to participate for payment or compensation in a "marketing research study" through the website www.olsononlinesystems.com.

Plaintiff anticipates modifying the proposed class definition, including proposing subclasses where appropriate, after discovery about the scope and breadth of Defendants' fax advertising program and will do so through an amended motion for class certification pursuant to Fed. R. Civ. P. 23.

29.    Excluded from the class are Defendants, any entity in which any Defendant has a controlling interest, each of Defendants' officers, directors, legal representatives, heirs, successors, and assigns, and any Judge assigned to this action, including his or her immediate family.

30.    In this action, Plaintiff intends to discover, include, and resolve the merits of claims about all advertisements Defendants sent by fax. Exhibit F, a Demand for Preservation of All Tangible Documents Including Electronically Stored Information.

31.    This action is brought and may properly be maintained as a class action pursuant to Fed. R. Civ. P. 23. This action satisfies Rule 23 (a)'s numerosity, commonality, typicality, and adequacy requirements. Furthermore, the questions of law or fact that are common in this action predominate over any individual questions of law or fact making class representation the superior method to adjudicate this controversy under Rule 23 (b) (3).

32.    **Numerosity/impracticality of joinder.** On information and belief, the class consists of more than 39 persons and, thus, is so numerous that individual joinder of each member is impracticable. The precise number of class members and their identities are unknown to Plaintiffs, but will be obtained from Defendants' records or the records of third parties.

33.    **Commonality and predominance.** There is a well-defined community of interest and there are common questions of law and fact that predominate over any questions affecting only individual members of the class. These common legal and factual questions, which do not vary from one class member to another, and which may be determined without reference to the individual circumstances of any class member,

include, but are not limited to the following:

a.      Whether <u>Exhibit A</u> and other yet-to-be-discovered facsimiles sent by or on behalf of Defendants advertised the commercial availability or quality of any property, goods or services;

b.      Whether Defendants were the senders of advertisements by facsimile;

c.      The manner and method used to compile or obtain the list(s) of fax numbers to which Defendants sent the faxes at issue;

d.      Whether the Court should award statutory damages to Plaintiff and the other class members;

e.      If the Court finds that Defendants willfully or knowingly violated the TCPA, whether the Court should exercise its discretion to increase the amount of the statutory damages award to an amount equal to not more than three times the amount;

f.      Whether the Court should enjoin Defendants from faxing advertisements in the future; and

g.      Whether Defendants' conduct as alleged herein

constituted conversion.

34.   **Typicality of claims.** Plaintiff's claims are typical of the claims of the other class members, because Plaintiff and all class members were injured by the same wrongful practices. Plaintiff and the members of the class received Defendants' advertisements by facsimile and those advertisements did not contain the opt-out notice required by the TCPA. Under the facts of this case, because the focus is upon Defendants' conduct, if Plaintiff prevails on his claims, then the other putative class members will prevail as well.

35.   **Adequacy of representation.** Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class he seeks to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation, and TCPA litigation in particular, and Plaintiff intends to vigorously prosecute this action. Plaintiff and his counsel will fairly and adequately protect the interest of members of the class.

36.   **Prosecution of separate claims would yield inconsistent results.** Even though the questions of fact and law in this action are predominantly common to Plaintiff and the putative class members,

separate adjudication of each class member's claims would yield inconsistent and varying adjudications. Such inconsistent rulings would create incompatible standards for Defendants to operate under if/when class members bring additional lawsuits concerning the same unsolicited fax advertisements or if Defendants choose to advertise by fax again in the future.

37.    **A class action is the superior method of adjudicating the common questions of law or fact that predominate over individual questions.** A class action is superior to other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all class members is economically unfeasible and procedurally impracticable. The likelihood of individual class members prosecuting separate claims is remote, and even if every class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. Relief concerning Plaintiff's rights under the laws herein alleged and with respect to the class would be proper. Plaintiff envisions no difficulty in the

management of this action as a class action.

**COUNT I**
**TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227**

38.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

39.    Plaintiff brings Count I on behalf of himself and a class of similarly situated persons against Defendants.

40.    The TCPA prohibits the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine…." 47 U.S.C. § 227 (b) (1).

41.    The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission." 47 U.S.C. § 227 (a) (4).

42.    Exhibit A advertises Defendants' commercially available marketing research program and offers to pay recipients for participating in marketing research conducted for Defendants' paying client(s). Exhibit A.

43.    By requiring fax recipients to go to its website at www.olsononlinesystems.com, Defendants' fax advertises Defendants'

"full-service marketing research and consulting firm that conducts a variety of market research surveys, both online and offline." <u>Exhibit D</u>.

44.     Defendants' website tells potential survey participants that their information and opinions are "invaluable." <u>Exhibit C</u> ("Privacy Policy").

45.     Olson's clients are "important decision makers in major corporations and organizations." <u>Exhibit C</u> ("Privacy Policy").

46.     Defendants sent <u>Exhibit A</u> to Plaintiff and the fax machines of other health professionals offering compensation for participation in marketing research.

47.     Through <u>Exhibit A</u>, Defendants intended to gather opinions and other valuable market research and information from paid participants and then provide that data to Defendants' clients in the healthcare industry.

48.     The TCPA provides a private right of action as follows:

> 3.     <u>Private right of action</u>.  A person may, if otherwise permitted by the laws or rules of court of a state, bring in an appropriate court of that state:
>
> > (A)   An action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such

violation,

(B)    An action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

(C)    Both such actions.

47 U.S.C. § 227 (b) (3).

49.    The Court, in its discretion, may treble the statutory damages if it determines that a violation was knowing or willful.   47 U.S.C. § 227 (b) (3).

50.    Here, Defendants violated 47 U.S.C. § 227 (b) (1) (C) by sending advertisements by facsimile (such as Exhibit A) to Plaintiff and the other class members without their prior express invitation or permission.

51.    The TCPA requires that every advertisement sent by facsimile must include an opt-out notice clearly and conspicuously displayed on the bottom of its first page. 47 U.S.C. § 227 (b) (2) (D) and (E); 47 C.F.R. § 64.1200 (a) (4).

52.    Here, Defendants violated 47 U.S.C. § 227 (b) (2) (D) and (E) and 47 C.F.R. § 64.1200 (a) (4) (iii) & (v) by failing to include a compliant opt-out notice. Exhibit A.

53. Facsimile advertising imposes burdens on recipients that are distinct from the burdens imposed by other types of advertising. The required opt-out notice provides recipients the necessary information to opt-out of future fax transmissions, including a notice that the sender's failure to comply with the opt-out request will be unlawful. 47 C.F.R. § 64.1200 (a) (4) (iii).

54. <u>Exhibit A</u> does not state that Defendants' failure to comply with an opt-out request within 30 days is unlawful.

55. <u>Exhibit A</u> does not inform the recipient that he/she/it has a legal right to request that Defendants not send any future fax.

56. <u>Exhibit A</u> does not inform the recipient that an opt-out request will be valid only unless and until the person making the request subsequently provides express invitation or permission to the sender, in writing or otherwise, to send such advertisement to such person at such telephone facsimile machine.

57. The TCPA is a strict liability statute and Defendants are liable to Plaintiff and the other class members even if Defendants' actions were negligent. 47 U.S.C. § 227 (b) (3).

58. If Defendants' actions were knowing or willful, then the

Court has the discretion to increase the statutory damages up to three times the amount. 47 U.S.C. § 227 (b) (3).

59.    Defendant Olson is liable for the fax advertisements at issue because it sent the faxes, caused the faxes to be sent, participated in the activity giving rise to or constituting the violation, the faxes were sent on its behalf, or under general principles of vicarious liability, including actual authority, apparent authority and ratification.

60.    Defendant's actions damaged Plaintiff and the other class members. Receiving Defendants' junk faxes caused the recipients to lose paper and toner consumed in the printing of Defendants' faxes. The subject faxes used the fax machines of Plaintiff and the other class members. The subject faxes wasted Plaintiff's valuable time, requiring receipt and review Defendants' unlawful fax. Defendants' faxes unlawfully interrupted Plaintiff and the other class members' privacy interests in being left alone. Finally, the injury and property damage sustained by Plaintiff and the other class members from the sending of unlawful fax advertisements occurred outside Defendants' premises.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment in his favor and against

Defendants, jointly and severally, as follows:

A.     That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.     That the Court award $500.00 in statutory damages for each violation of the TCPA;

C.     That, if it finds Defendants willfully or knowingly violated the TCPA's faxing prohibitions, the Court exercise its discretion to increase the amount of the statutory damages award to an amount equal to not more than 3 times the amount (Plaintiff requests trebling);

D.     That the Court enter an injunction prohibiting Defendants from violating the TCPA; and

E.     That the Court award costs and such further relief as the Court may deem just and proper.

## COUNT II
## CONVERSION

61.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

62.    Plaintiff brings Count II on behalf of himself and a class of similarly situated persons and against Defendants.

63.    By sending advertisements to their fax machines, Defendants improperly and unlawfully converted the class's fax machines to Defendants' own use. Where printed (as in Plaintiff's case), Defendants also improperly and unlawfully converted the class members' paper and toner to Defendants' own use. Defendants also converted Plaintiff's time to Defendants' own use, as it did with the valuable time of the other class members.

64.    Immediately prior to the sending of the unsolicited faxes, Plaintiff and the other class members each owned an unqualified and immediate right to possession of their fax machines, paper, toner, and employee time.

65.    By sending them unsolicited faxes, Defendants permanently misappropriated the class members' fax machines, toner, paper, and employee time to their own use. Such misappropriation was wrongful and without authorization.

66.    Defendants knew or should have known that its misappropriation of paper, toner, and employee time was wrongful and

without authorization.

67.    Plaintiff and the other class members were deprived of the use of the fax machines, paper, toner, and employee time, which could no longer be used for any other purpose. Plaintiff and each class member thereby suffered damages as a result of their receipt of unsolicited fax advertisements from Defendants.

68.    Defendants' unsolicited faxes effectively stole Plaintiff's employees' time because persons employed by Plaintiff were involved in receiving, routing, and reviewing Defendants' illegal faxes. Defendants knew or should have known employees' time is valuable to Plaintiff.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment in his favor and against Defendants, jointly and severally, as follows:

A.    That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.    That the Court award damages;

C.    That the Court award punitive damages;

D.     That the Court award attorney's fees;

E.     That the Court award costs of suit; and

F.     That the Court award such further relief as it may deem just

and proper under the circumstances.

Respectfully submitted,

DR. RICHARD E. FISCHBEIN, individually
and as the representative of a class of
similarly-situated persons,

By:  /s/ Phillip A. Bock

Richard Shenkan (PA 79800)
Shenkan Injury Lawyer LLC
6550 Lakeshore St.
West Bloomfield, MI 48321429
Telephone: 248-562-1320
Facsimile:  888-769-1774
rshenkan@shenkanlaw.com

Phillip A. Bock (pro hac vice to be submitted)
Bock, Hatch, Lewis & Oppenheim, LLC
134 N. La Salle St., Ste. 1000
Chicago, IL  60602
Telephone:  312-658-5500
Facsimile:  312-658-5555
service@classlawyers.com

EXHIBIT A



# Earn $150.00 For Online Study RE: the Management of Disorders in Neurological Patients

## ATTN: DR. RICHARD FISCHBEIN

Fax: 5705523779                    Date: Tuesday, May 16, 2017

This communication alerts you to an upcoming marketing research study of interest to your profession. This is not a solicitation or advertisement to sell you any product or service.

We are looking to gain feedback from a selected group of specialists, like you, regarding **the management of disorders in neurological patients.** This study should take approximately 45 minutes to complete

For your time and opinions, we would like to present you with <u>A FAIR MARKET VALUE COMPENSATION OF:</u>

## <u>$150.00</u>

(Please note: There will be a few preliminary questions to determine whether this study is a good fit for you.)

| |
|---|
| 1)    Go to:    www.olsononlinesystems.com |
| 2)    Enter the following in the Study # box provided: **z1361** |
| 3)    Enter the following password: **jpatsy** |

**\*\*Please note the above password is only for use by: *DR. RICHARD FISCHBEIN.*** If you are not the intended recipient of this invitation and you use the password to complete the survey, if you complete the survey more than once, or if you are on the List of Excluded Individuals/Entities (LEIE) at the time of participation, Olson Research Group will NOT use your data in our study and will NOT compensate you. This password is NOT transferable. Please allow 4-6 weeks for processing. If after this timeframe you have any questions regarding your remuneration, please call 1-267-352-4918.

Please be advised that this study is for marketing research only and not for any sales or marketing purpose. Your identity will be kept strictly confidential, and the information you provide will only be passed on to our client anonymously and in aggregate.If you have any questions, please call us toll-free at 1-888-834-9799, and mention the above referenced study. Thank you in advance for your consideration and continued interest in medical marketing research!
*Note: If you would like to be removed from this study and all future study invitation lists, please call toll free 877-281-6342 enter PIN: 9958 or visit www.donotsend.net, select FAX, and enter PIN: 9958. Please note that requests may take up to one day to fully process.*

# EXHIBIT B

# Olson Research Group, Inc.

HOME    ABOUT US    QUALITATIVE RESEARCH    QUANTITATIVE RESEARCH    INSIGHTS    **CONTACT**

REQUEST FOR PROPOSAL

HOME    ABOUT US    QUALITATIVE RESEARCH    QUANTITATIVE RESEARCH    INSIGHTS    **CONTACT**

REQUEST FOR PROPOSAL

# Contact Us

## PENNSYLVANIA HEADQUARTERS

1020 Stony Hill Road, Suite 200
Yardley, PA 19067
Tel: 267.487.5500
Email:
info@olsonresearchgroup.com

## CALIFORNIA OFFICE

225 East Bayshore Road, Suite 100
Palo Alto, CA 94303
Tel: 866.808.6690
Email:
info@olsonresearchgroup.com

## FEATURED INSIGHTS



ARE YOU A PHYSICIAN OR OTHER HEALTH CARE PROVIDER?

We invite you to add your name and contact information to our database.

HEALTHCARE PROFESSIONAL SIGNUP

........................................................................................................................

# Get in Touch

# Olson Research Group, Inc.

HOME    ABOUT US    QUALITATIVE RESEARCH    QUANTITATIVE RESEARCH    INSIGHTS    **CONTACT**

REQUEST FOR PROPOSAL

Research Interests/Needs

Additional Comments

View +
Download >

BECOME AN
INSIGHTS
INSIDER

*Receive
Insights
Reports In
Your Inbox*

Verification expired. Check the checkbox
again.

I'm not a robot

reCAPTCHA
Privacy - Terms

email

SUBMIT

SUBMIT

# Frequently Asked Questions

## WHICH MARKETING RESEARCH SERVICES DO YOU SPECIALIZE IN?

## HOW LARGE IS YOUR PANEL OF HEALTHCARE PROVIDERS?

## WHICH THERAPEUTIC AREAS DO YOU SPECIALIZE IN?

# Olson Research Group, Inc.

## RESEARCH?

## WHAT KIND OF ACCESS DO YOU HAVE IN THE PAYER COMMUNITY?

## DOES OLSON HAVE ACCESS TO KEY OPINION LEADERS?

## HOW QUICKLY ARE YOU ABLE TO COMPLETE PROJECTS?

## WHAT KIND OF EXPERIENCE DO YOUR PROJECT MANAGERS HAVE?

## WHO ARE YOUR CLIENTS?

Olson is proud to have achieved one of the highest client retention rates in the industry over the past 20+ years. Our clients come from all dimensions of the healthcare spectrum, from end-user manufacturers, to consulting firms and other marketing research organizations. We approach each project with a flexible and personalized approach to getting the right respondents and providing the insights they need to make fast decisions on their strategic goals. We are very proud that our reputation in the healthcare marketing research industry is such that we are considered the "go-to" firm when others are unable to satisfy a project's requirements.

CONTACT          FOLLOW                    INDUSTRY AFFILIATIONS

# Olson Research Group, Inc.

HOME      ABOUT US      QUALITATIVE RESEARCH      QUANTITATIVE RESEARCH      INSIGHTS      **CONTACT**

REQUEST FOR PROPOSAL

Yardley, PA
19067
Tel:
267.487.5500

**California
Office**
2225 East
Bayshore
Road, Suite
100
Palo Alto, CA
94303
Tel:
866.808.6690





© 2017 Olson Research Group. All Rights Reserved.

# EXHIBIT C



Olson Research Group, Inc.
Healthcare Marketing Research

ADD MY NAME TO YOUR DATABASE          PRIVACY POLICY          HELP

# The Olson Research Group, Inc. and Olson Online Systems Privacy Policy

The Olson Research Group is a full-service marketing research and consulting firm that conducts a variety of market research surveys, both online and offline. Online surveys are conducted over the Internet, while offline studies include telephone surveys, personal interviews and focus groups. We offer our online survey services through this website (http://www.olsononlinesystems.com/).

The home page for The Olson Research Group is http://www.olsonresearchgroup.com/.

## Data Uses
Olson Research Group's research activities provide participants with the opportunity to express opinions and attitudes about a variety of issues. We conduct research that involves people from around the world, in areas such as pharmaceutical/healthcare, consumer goods and services, animal health and agriculture. The invaluable information and opinions you provide through market research surveys helps companies develop new products and services, and modify existing ones to better suit your needs. We are commissioned by a wide variety of clients, including important decision makers in major corporations and organizations.

## Protecting Your Privacy
As a professional marketing research firm, protecting survey participants' privacy is an integral part of our business, both with our online and offline studies. The Olson Research Group will never sell your personally identifiable information to another party, nor use it for solicitation purposes. We use this information for internal purposes and share it only with our research partners in order to gather and analyze aggregated, anonymous survey results. We share information with our partners only in limited circumstances, specifically to allow our clients the ability to validate our work, or to use the data as an analytical aid.

Personal information will never be used to directly market products and services to our respondents unless this possibility has been disclosed at the outset of the research activity and consent has been obtained.

When we provide a client with survey results, they are aggregated with all other study participants and stripped of any personally identifiable information thus as a participant in a study, your identity is kept anonymous. As a member of the Council of American Survey Research Organizations (CASRO), Olson Research Group conforms to CASRO's Code of Standards and Ethics for Survey Research. You can find more information about CASRO at www.casro.org.

Since much of our research is conducted in the healthcare arena, we are particularly aware of the importance of protecting respondent's Personally Identifiable Information, or PII, which is information that can be used on its own or with other information to identify, contact, or locate a single person, or to identify an individual in context. Olson Research fully complies with all legal requirements such as the Health Insurance Portability and Accountability Act of 1996 (HIPPA), and other existing statutes and privacy guidelines. We fully comply with these regulations when handling PII.

Olson Research Group will maintain the security of PII, abiding by industry stated best practices with a commercially reasonable degree of care.

All PII obtained through our research will be treated confidentially, used for research purposes solely by individuals assigned to research and report findings, and will not be disclosed to any person not employed by Olson Research Group, except with consent as required by law or court order.

Olson Research will not transfer PII to a country or territory unless that country or territory ensures the proper protection and handling of sensitive data.

## Your Information
It is important to us that panelists are able to access and correct their information. We want to make sure we can contact you again, and we also want to ensure that our demographic data is up-to-date.

Olson Research encourages you to contact us at any time should you wish to change or modify your information with us or change your consent to contact preferences.

You can do any one of the following:

Send mail to:                         Call toll-free:
The Olson Research Group, Inc.         1-888-799-5311
Survey Panel Department
1020 Stony Hill Road, Suite 300        Send an email to:
Yardley, PA 19067                      Update Contact Info.

## Removal From Our Database
If at any point you decide that you no longer wish to be a study participant of Olson Research, you can send an email request to info@olsonresearchgroup.com telling us you wish to be removed from our database and you will

no longer be contacted for research studies.

**Privacy Policy Questions**

If you have any questions about this privacy statement, our research process, or suggestions on how we can make our survey experience better for you, please contact us.

Olson Research will periodically review its Privacy Policy and PII collection, use and disclosure practices to ensure we are in compliance with all applicable laws and regulations.

© 2013 Olson Research Group, All Rights Reserved

Pennsylvania Office
1026 Stony Hill Road, Suite 300
Yardley, PA 19067
Tel: 267.497.6500

California Office
2225 East Bayshore Road, Suite 100
Palo Alto, CA 94303
Tel: 866.206.6990

# EXHIBIT D



Olson Research Group, Inc.
Healthcare Marketing Research

ADD MY NAME TO YOUR DATABASE        PRIVACY POLICY        HELP

## Welcome to Olson Online

The Olson Research Group, Inc. is a full-service marketing research firm, specializing in healthcare, consumer and agricultural research. We offer all phases of qualitative and quantitative research solutions.

**If you are responding to a current online study, please type the study number below and click Submit:**

Study # [            ]   [ SUBMIT ]

© 2013 Olson Research Group, All Rights Reserved.

**Pennsylvania Office**
1020 Stony Hill Road, Suite 300
Yardley, PA 19067
Tel: 267.487.5500

**California Office**
2225 East Bayshore Road, Suite 100
Palo Alto, CA 94303
Tel: 866.808.6690

# EXHIBIT E

# Olson Research Group, Inc.

HOME   ABOUT US   QUALITATIVE RESEARCH   QUANTITATIVE RESEARCH   INSIGHTS   **CONTACT**   REQUEST FOR PROPOSAL

HOME   ABOUT US   QUALITATIVE RESEARCH   QUANTITATIVE RESEARCH   INSIGHTS   **CONTACT**   REQUEST FOR PROPOSAL

# Contact Us

## PENNSYLVANIA HEADQUARTERS

1020 Stony Hill Road, Suite 200
Yardley, PA 19067
Tel: 267.487.5500
Email: info@olsonresearchgroup.com

## CALIFORNIA OFFICE

225 East Bayshore Road, Suite 100
Palo Alto, CA 94303
Tel: 866.808.6690
Email: info@olsonresearchgroup.com

FEATURED
INSIGHTS

ARE YOU A PHYSICIAN OR OTHER HEALTH CARE PROVIDER?

We invite you to add your name and contact information to our database.

Contact | Olson Research Group

http://www.olsonresearchgroup.com/contact/

# Olson Research Group, Inc.

HOME     ABOUT US     QUALITATIVE RESEARCH     QUANTITATIVE RESEARCH     INSIGHTS     **CONTACT**     REQUEST FOR PROPOSAL

Name:

Company:

Title

Phone:

Email:

Research Interests/Needs

Additional Comments

I'm not a robot

reCAPTCHA
Privacy - Terms

SUBMIT

Please elaborate on any of the points above.



CLIENT
SATISFACTION
SURVEY RESULTS

November 9, 2017

View + Download >

BECOME AN INSIGHTS
INSIDER

*Receive Insights
Reports In Your
Inbox*

email

SUBMIT

# Olson Research Group, Inc.

## SPECIALIZE IN?

## HOW LARGE IS YOUR PANEL OF HEALTHCARE PROVIDERS?

Olson Research Group does not offer a static panel of respondents but instead harnesses a proprietary database that contains ~2.4 million unique healthcare provider records, including 960,000 actively practicing physicians with associated NPI, and ~60,000 nurses and other para-professionals. The foundation of our database, which serves as the backbone for sourcing records as well as ensures the accuracy and validity, is Olson's exclusive partnership with a healthcare database consortium that assists us in cross-checking contact information (i.e. name, phone/email, specialty) with industry sources, and also appends details such as NPI numbers and other relevant targeting information. Data is imported and updated on a weekly basis. In conjunction with this relationship, Olson has specialty validation procedures in place for checking the accuracy of respondents during the lifecycle of every project using a multi-step process to ensure we are providing our clients with strategically profiled respondents for highly efficient fielding.

## WHICH THERAPEUTIC AREAS DO YOU SPECIALIZE IN?

## WHAT ARE YOUR INTERNATIONAL CAPABILITIES?

## HOW DO YOU TYPICALLY CONDUCT YOUR QUALITATIVE AND QUANTITATIVE RESEARCH?

## WHAT KIND OF ACCESS DO YOU HAVE IN THE PAYER

# Olson Research Group, Inc.

HOW QUICKLY ARE YOU ABLE TO COMPLETE PROJECTS?

WHAT KIND OF EXPERIENCE DO YOUR PROJECT MANAGERS HAVE?

WHO ARE YOUR CLIENTS?

# Olson Research Group, Inc.

HOME   ABOUT US   QUALITATIVE RESEARCH   QUANTITATIVE RESEARCH   INSIGHTS   **CONTACT**   REQUEST FOR PROPOSAL

1020 Stony Hill Road,
Suite 200
Yardley, PA 19067
Tel: 267.487.5500

**California Office**
2225 East Bayshore
Road, Suite 100
Palo Alto, CA 94303
Tel: 866.808.6690







© 2017 Olson Research Group. All Rights Reserved.

# EXHIBIT F

# BOCK, HATCH, LEWIS & OPPENHEIM, LLC

134 North La Salle Street, Suite 1000

Chicago, IL 60602

312-658-5500 (Phone) ● 312-658-5555 (Fax)

**December 12, 2017**

In re: *Dr. Richard E. Fischbein v. The Olson Research Group, Inc. and John Does 1-12* (ED Pennsylvania).

### Demand for Preservation of All Tangible Documents
### Including Electronically Stored Information

As part of the Class Action Complaint against The Olson Research Group, Inc. and John Does 1-12 ("Defendants"), plaintiff, Dr. Richard E. Fischbein, hereby issues a demand for Defendants to preserve all tangible documents, including electronically stored information.

As used in this document, "you" and "your" refers to each Defendant, and its predecessors, successors, parents, subsidiaries, divisions or affiliates, and its respective officers, directors, agents, attorneys, accountants, employees, partners or other persons occupying similar positions or performing similar functions.

You should anticipate that much of the information subject to disclosure or responsive to discovery in this matter is stored on your current and former computer systems and other media and devices (including personal digital assistants, voice-messaging systems, online repositories and cell phones).

Electronically stored information (hereinafter "ESI") should be afforded the broadest possible definition and includes (by way of example and not as an exclusive list) potentially relevant information electronically, magnetically or optically stored as:

• Digital communications (e.g., e-mail, voice mail, instant messaging);
• Word processed documents (e.g., Word or WordPerfect documents and drafts);
• Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);
• Accounting Application Data (e.g., QuickBooks, Money, Peachtree data files);
• Image and Facsimile Files (e.g., .PDF, .TIFF, .JPG, .GIF images);
• Sound Recordings (e.g., .WAV and .MP3 files);
• Video and Animation (e.g., .AVI and .MOV files);
• Databases (e.g., Access, Oracle, SQL Server data, SAP);

1

• Contact and Relationship Management Data (e.g., Outlook, ACT!);
• Calendar and Diary Application Data (e.g., Outlook PST, Yahoo, blog tools);
• Online Access Data (e.g., Temporary Internet Files, History, Cookies);
• Presentations (e.g., PowerPoint, Corel Presentations)
• Network Access and Server Activity Logs;
• Project Management Application Data;
• Computer Aided Design/Drawing Files; and,
• Back Up and Archival Files (e.g., Zip, .GHO)

ESI resides not only in areas of electronic, magnetic and optical storage media reasonably accessible to you, but also in areas you may deem not reasonably accessible. You are obliged to preserve potentially relevant evidence from both these sources of ESI, even if you do not anticipate producing such ESI.

The demand that you preserve both accessible and inaccessible ESI is reasonable and necessary. Pursuant to amendments to the Federal Rules of Civil Procedure that have been approved by the United States Supreme Court (eff. 12/1/05), you must identify all sources of ESI you decline to produce and demonstrate to the court why such sources are not reasonably accessible. For good cause shown, the court may then order production of the ESI, even if it finds that it is not reasonably accessible. Accordingly, even ESI that you deem reasonably inaccessible must be preserved in the interim so as not to deprive the plaintiffs of their right to secure the evidence or the Court of its right to adjudicate the issue.

### A. Preservation Requires Immediate Intervention

You must act immediately to preserve potentially relevant ESI regarding the time period of December 2013 to the date You receive this letter. Potentially relevant ESI includes, but is not limited to information:

1. Regarding the events and causes of action described in Plaintiff's Class Action Complaint; and
2. Regarding Your claims or defenses to Plaintiff's Class Action Complaint.

Adequate preservation of ESI requires more than simply refraining from efforts to destroy or dispose of such evidence. You must also intervene to prevent loss due to routine operations and employ proper techniques and protocols suited to protection of ESI. Be advised that sources of ESI are altered and erased by continued use of your computers and other devices. Booting a drive, examining its contents or running any application will irretrievably alter the evidence it contains and may constitute unlawful spoliation of evidence. Consequently, alteration and erasure may result from your failure to act diligently and responsibly to prevent loss or corruption of ESI. Nothing in this demand for preservation of ESI should be understood to diminish your

concurrent obligation to preserve document, tangible things and other potentially relevant evidence.

## B.      Suspension of Routine Destruction

You are directed to immediately initiate a litigation hold for potentially relevant ESI, documents and tangible things, and to act diligently and in good faith to secure and audit compliance with such litigation hold. You are further directed to immediately identify and modify or suspend features of your information systems and devices that, in routine operation, operate to cause the loss of potentially relevant ESI. Examples of such features and operations include:

• Purging the contents of e-mail repositories by age, capacity or other criteria;
• Using data or media wiping, disposal, erasure or encryption utilities or devices;
• Overwriting, erasing, destroying or discarding back up media;
• Re-assigning, re-imaging or disposing of systems, servers, devices or media;
• Running antivirus or other programs effecting wholesale metadata alteration;
• Releasing or purging online storage repositories;
• Using metadata stripper utilities;
• Disabling server or IM logging; and,
• Executing drive or file defragmentation or compression programs.

## C.      Guard Against Deletion

You should anticipate that your employees, officers or others may seek to hide, destroy or alter ESI and act to prevent or guard against such actions. Especially where company machines have been used for Internet access or personal communications, you should anticipate that users may seek to delete or destroy information they regard as personal, confidential or embarrassing and, in so doing, may also delete or destroy potentially relevant ESI. This concern is not one unique to you or your employees and officers. It's simply an event that occurs with such regularity in electronic discovery efforts that any custodian of ESI and their counsel are obliged to anticipate and guard against its occurrence.

## D.      Preservation by Imaging

You should take affirmative steps to prevent anyone with access to your data, systems and archives from seeking to modify, destroy or hide electronic evidence on network or local hard drives (such as by deleting or overwriting files, using data shredding and overwriting applications, defragmentation, re-imaging or replacing drives, encryption, compression, steganography or the like). With respect to local hard drives, one way to protect existing data on local hard drives is by the creation and authentication of a forensically qualified

image of all sectors of the drive. Such a forensically qualified duplicate may also be called a bitstream image or clone of the drive. Be advised that a conventional back up of a hard drive is not a forensically qualified image because it only captures active, unlocked data files and fails to preserve forensically significant data that may exist in such areas as unallocated space, slack space and the swap file.

With respect to the hard drives and storage devices of each of the persons named below and of each person acting in the capacity or holding the job title named below, as well as each other person likely to have information pertaining to the instant action on their computer hard drive(s), demand is made that you immediately obtain, authenticate and preserve forensically qualified images of the hard drives in any computer system (including portable and home computers) used by that person during the period from December 2013 to today's date as well as recording and preserving the system time and date of each such computer.

Once obtained, each such forensically qualified image should be labeled to identify the date of acquisition, the person or entity acquiring the image and the system and medium from which it was obtained. Each such image should be preserved without alteration.

### E.    Preservation in Native Form

You should anticipate that certain ESI, including but not limited to spreadsheets and databases, will be sought in the form or forms in which it is ordinarily maintained. Accordingly, you should preserve ESI in such native forms, and you should not select methods to preserve ESI that remove or degrade the ability to search your ESI by electronic means or make it difficult or burdensome to access or use the information efficiently in the litigation. You should additionally refrain from actions that shift ESI from reasonably accessible media and forms to less accessible media and forms if the effect of such actions is to make such ESI not reasonably accessible.

### F.    Metadata

You should further anticipate the need to disclose and produce system and application metadata and act to preserve it. System metadata is information describing the history and characteristics of other ESI. This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location and dates of creation and last modification or access. Application metadata is information automatically included or embedded in electronic files but which may not be apparent to a user, including deleted content, draft language, commentary, collaboration and distribution data and dates of creation and printing. Be advised that metadata may be overwritten or corrupted by careless

4

handling or improper steps to preserve ESI. For electronic mail, metadata includes all header routing data and Base 64 encoded attachment data, in addition to the To, From, Subject, Received Date, CC and BCC fields.

### G.    Servers

With respect to servers like those used to manage electronic mail (e.g., Microsoft Exchange, Lotus Domino) or network storage (often called a user's "network share"), the complete contents of each user's network share and e-mail account should be preserved. There are several ways to preserve the contents of a server depending upon, e.g., its RAID configuration and whether it can be downed or must be online 24/7. If you question whether the preservation method you pursue is one that we will accept as sufficient, please call to discuss it.

### H.    Home Systems, Laptops, Online Accounts and Other ESI Venues

Though we expect that you will act swiftly to preserve data on office workstations and servers, you should also determine if any home or portable systems may contain potentially relevant data. To the extent that officers, board members or employees have sent or received potentially relevant e-mails or created or reviewed potentially relevant documents away from the office, you must preserve the contents of systems, devices and media used for these purposes (including not only potentially relevant data from portable and home computers, but also from portable thumb drives, CD-R disks and the user's PDA, smart phone, voice mailbox or other forms of ESI storage.). Similarly, if employees, officers or board members used online or browser-based email accounts or services (such as AOL, Gmail, Yahoo Mail or the like) to send or receive potentially relevant messages and attachments, the contents of these account mailboxes (including Sent, Deleted and Archived Message folders) should be preserved.

### I.    Ancillary Preservation

You must preserve documents and other tangible items that may be required to access, interpret or search potentially relevant ESI, including logs, control sheets, specifications, indices, naming protocols, file lists, network diagrams, flow charts, instruction sheets, data entry forms, abbreviation keys, user ID and password rosters or the like.

You must preserve any passwords, keys or other authenticators required to access encrypted files or run applications, along with the installation disks, user manuals and license keys for applications required to access the ESI. You must preserve any cabling, drivers and hardware, other than a standard 3.5" floppy disk drive or standard CD or DVD optical disk drive, if needed to access

or interpret media on which ESI is stored. This includes tape drives, bar code readers, Zip drives and other legacy or proprietary devices.

### J.    Paper Preservation of ESI is Inadequate

As hard copies do not preserve electronic searchability or metadata, they are not an adequate substitute for, or cumulative of, electronically stored versions. If information exists in both electronic and paper forms, you should preserve both forms.

### K.    Agents, Attorneys and Third Parties

Your preservation obligation extends beyond ESI in your care, possession or custody and includes ESI in the custody of others that is subject to your direction or control. Accordingly, you must notify any current or former agent, attorney, employee, custodian or contractor in possession of potentially relevant ESI, including but not limited to persons/entities involved in marketing, advertising, and fax broadcasting on your behalf, to preserve such ESI to the full extent of your obligation to do so, and you must take reasonable steps to secure their compliance.

### L.    System Sequestration or Forensically Sound Imaging

We suggest that, with respect to Defendants removing their ESI systems, media and devices from service and properly sequestering and protecting them may be an appropriate and cost-effective preservation step. In the event you deem it impractical to sequester systems, media and devices, we believe that the breadth of preservation required, coupled with the modest number of systems implicated, dictates that forensically sound imaging of the systems, media and devices is expedient and cost effective. As we anticipate the need for forensic examination of one or more of the systems and the presence of relevant evidence in forensically accessible areas of the drives, we demand that you employ forensically sound ESI preservation methods. Failure to use such methods poses a significant threat of spoliation and data loss.

By "forensically sound," we mean duplication, for purposes of preservation, of all data stored on the evidence media while employing a proper chain of custody and using tools and methods that make no changes to the evidence and support authentication of the duplicate as a true and complete bit-for-bit image of the original. A forensically sound preservation method guards against changes to metadata evidence and preserves all parts of the electronic evidence, including the so-called "unallocated clusters," holding deleted files.

### M.      Preservation Protocols

We are desirous of working with you to agree upon an acceptable protocol for forensically sound preservation and can supply a suitable protocol, if you will furnish an inventory of the systems and media to be preserved. Else, if you will promptly disclose the preservation protocol you intend to employ, perhaps we can identify any points of disagreement and resolve them. A successful and compliant ESI preservation effort requires expertise. If you do not currently have such expertise at your disposal, we urge you to engage the services of an expert in electronic evidence and computer forensics. Perhaps our respective expert(s) can work cooperatively to secure a balance between evidence preservation and burden that's fair to both sides and acceptable to the Court.

### N.      Do Not Delay Preservation

I'm available to discuss reasonable preservation steps; however, you should not defer preservation steps pending such discussions if ESI may be lost or corrupted as a consequence of delay. Should your failure to preserve potentially relevant evidence result in the corruption, loss or delay in production of evidence to which we are entitled, such failure would constitute spoliation of evidence, and we will not hesitate to seek sanctions.

### O.      Confirmation of Compliance

Please confirm that you have taken the steps outlined in this letter to preserve ESI and tangible documents potentially relevant to this action. If you have not undertaken the steps outlined above, or have taken other actions, please describe what you have done to preserve potentially relevant evidence.


Respectfully,

Phillip A. Bock
Bock, Hatch, Lewis & Oppenheim, LLC
134 N. LaSalle St., Suite 1000
Chicago, IL 60602
512-739-0390 (cell)
312-658-5515 (direct)
service@classlawyers.com